UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIPPORAH ABIGAIL FOWLER,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No. EDCV 13-1441 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I.  SUMMARY

On August 14, 2013, plaintiff Zipporah Abigail Fowler ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 28, 2013 Case Management Order ¶ 5.

///

///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 23, 2008, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 224). Plaintiff asserted that she became disabled on August 1, 2007, due to numbness in feet and hands, and anxiety. (AR 243). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 20, 2009. (AR 73-95). On December 8, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 101-07).

On June 17, 2011, the Appeals Council granted review, vacated the ALJ's December 8, 2009 decision, and remanded the matter for further administrative proceedings. (AR 21, 114-15). The Appeals Council also determined that a second application for benefits that plaintiff submitted on January 14, 2010 was duplicative, and ordered the ALJ to associate both of plaintiff's claim files and to issue a new decision on the associated claims. (AR 21, 115).

On October 27, 2011, the ALJ again examined the medical record and also heard testimony from plaintiff (who appeared with a non-attorney representative), a psychological expert and a vocational expert. (AR 35-66).

On December 21, 2011, the ALJ again determined that plaintiff was not disabled through the date of the decision. (AR 21-29). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: from October 23, 2008 through September 30, 2010, schizophrenia, depressive disorder (not otherwise specified), obesity, paresthesia, and low back pain, and beginning in October 2010, complaint of right knee problems (AR 23); (2) plaintiff's

impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 23-24); (3) for the period from October 23, 2008 through September 30, 2010, plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 416.967(b)) with certain exertional and nonexertional limitations, and beginning on October 1, 2010 plaintiff had an additional limitation related to her right knee problems[1] (AR 24); (4) plaintiff had no past relevant work (AR 28); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically small products assembler, electronics worker, and addresser (AR 29); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 25).

The Appeals Council denied plaintiff's second application for review. (AR 1).

III. APPLICABLE LEGAL STANDARDS

A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The

---

[1] The ALJ determined that from October 23, 2008 through September 30, 2010 plaintiff could perform light work, except plaintiff: (i) needed to change sit and stand positions once an hour for five minutes at a time; (ii) could perform postural activities occasionally, but never climb ladders, ropes, or scaffolds; (iii) could not engage in forceful torquing, gripping, or grasping with either hand; (iv) should avoid extreme cold or heat, hazardous machinery, and working at heights; (v) was limited to simple repetitive tasks; (vi) could not be responsible for the safety of others; (vii) could not have intense interpersonal contact with others; and (viii) beginning on October 1, 2010, needed to sit down up to three times per day for about 10 minutes each time. (AR 24-25).

impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262

F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B.     Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

### IV.    DISCUSSION

Plaintiff contends that the ALJ failed properly to consider the opinions of plaintiff's treating psychiatrists, Drs. Salvador E. Lasala and Romeo Villar. (Plaintiff's Motion at 18-23). The Court agrees. As the Court cannot find the ALJ's error harmless, a remand is warranted.

### A.     Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish

among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[2]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out

---

[2] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

6

detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id.

### B. Pertinent Facts

In a May 4, 2010 Mental Capacities Evaluation, Dr. Lasala diagnosed plaintiff with schizophrenia, paranoid type, and opined that plaintiff (1) had "chronic mental illness"; (2) had marked restriction of activities of daily living, marked difficulties in maintaining concentration, persistence or pace, and extreme difficulties in maintaining social functioning; (3) experienced "marked" episodes of decompensation within a 12-month period, each of which lasted at least two weeks in duration; and (4) would be absent from work more than four days per month due to her impairments or treatment (collectively "Dr. Lasala's Opinions"). (AR 458).

In a September 19, 2011 Psychiatric/Psychological Impairment Questionnaire, Dr. Villar diagnosed plaintiff with schizoaffective disorder and opined that plaintiff (1) had primary symptoms of depression, mood swings, hallucination "to stay away from people," paranoia, and racing thoughts; (2) had moderate to marked limitations in several of her mental abilities;[3] and (3) would

---

[3]Specifically, Dr. Villar opined that plaintiff (1) had marked limitations in her abilities to (a) understand, remember and carry out detailed instructions, (b) sustain ordinary routine without supervision, (c) work in coordination with or proximity to others without distraction, (d) complete a normal workweek without interruptions from psychologically based symptoms, (e) perform at a consistent pace without an unreasonable number and length of rest periods,
(continued...)

be absent from work more than three times a month due to her impairments or treatment (collectively "Dr. Villar's Opinions"). (AR 488-95).

In the administrative decision, the ALJ gave "little weight" to Dr. Lasala's and Dr. Villar's Opinions, explaining only that "although [plaintiff] remains symptomatic, she has shown good response to psychiatric treatment with infrequent adjustments to prescribed medication." (AR 27). Conversely, the ALJ gave "great weight" to the opinions of the testifying psychological expert, Dr. David Glassmire, whom the ALJ said "agreed with the State agency medical consultants that [plaintiff] was limited to nonpublic simple repetitive tasks." (AR 26) (citing AR 42; Exhibits 9F-11F [AR 430-46], 16F [AR 462-63]).

### C. Analysis

The Court concludes that the ALJ failed properly to consider Dr. Lasala's and Dr. Villar's Opinions.

First, the ALJ's reasons for rejecting the treating psychiatrists' opinions were inadequate. An ALJ may discredit a medical opinion where the claimant's mental impairments can be "effectively" controlled with medication. See Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted). Here, however, the ALJ's broad and conclusory statement that plaintiff

---

[3](...continued)
(f) respond appropriately to changes in the work setting, and (g) set realistic goals or make plans independently; (2) had moderate limitations in her abilities to (a) remember locations and work-like procedures, (b) understand and remember one or two step instructions, maintain attention and concentration for extended periods, perform activities within a schedule/maintain regular attendance, (c) accept instructions and respond appropriately to criticism from supervisors, (d) get along with co-workers or peers without distracting them or exhibiting behavioral extremes, (e) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and (f) travel to unfamiliar places or use public transportation; and (3) had mild limitations in her abilities to (a) carry out simple one or two-step instructions, and (b) be aware of normal hazards and take appropriate precautions. (AR 490-93).

"has shown good response to psychiatric treatment with infrequent adjustments to prescribed medication" does not explain which of plaintiff's multiple severe mental impairments responded well to treatment, whether the medication prescribed controlled plaintiff's impairments "effectively," or precisely how the ALJ's findings undermined the treating psychiatrists' opinions.  In fact, while plaintiff's treatment records do reflect some periods of improvement in her mental condition, the medical record also contains multiple treatment notes from Dr. Lasala, Dr. Villar and Dr. Enge (a physician also with the San Bernardino County Department of Behavioral Health) which support medical opinions that plaintiff suffered from severe limitations.  (See AR 468-69 ["fair" response to medication]; AR 478 [no stabilization or reduction of symptoms with medication]; AR 511 ["inadequate" response to medication]; AR 479, 504-05, 508, 211-12 [varying degrees of paranoia, feeling withdrawn, anxious mood, some hallucinations, delusions, impaired abstract thinking, poor insight, judgment and reality assessment]; AR 522, 524 [plaintiff reporting "the voices is [sic] always there. . . . They call [sic] me don't go around no body"; plaintiff "chronically hallucinating"]; AR 526 ["poor eye contact," "withdrawn" and "guarded" behavior, irritable, flat/blunted mood, auditory hallucinations, paranoid/ persecutory delusions, poor insight, fair to poor judgment).

   Second, the ALJ's evaluation of Dr. Lasala's and Dr. Villar's Opinions was not supported by substantial evidence.  As noted above, the ALJ rejected the treating psychiatrists' opinions in favor of the conflicting opinions of Dr. Glassmire, the non-examining testifying expert, and in part, the State agency reviewing psychiatrists.  Non-examining medical opinions may serve as substantial evidence supporting an ALJ's decision when "they are supported by other evidence in the record and are consistent with it."  Morgan, 169 F.3d at 600.  Here, however, Dr. Glassmire reached his opinions about plaintiff's abilities based solely on his review of treatment notes provided by Drs. Lasala and Villar.  (AR

1  44-50) (citing Exhibits 7F [AR 415-22]; 17F [AR 465-86]; 19F [AR 500-14]
2  (Lasala records); and Exhibit 18F [AR 488-95] (Villar records)).  The same is true
3  of the state agency reviewing psychiatrists.  (AR 445-46, 462-63).  Accordingly,
4  such medical opinions could not serve as substantial evidence supporting the
5  ALJ's rejection of Dr. Lasala's and Dr. Villar's Opinions.  See Orn, 495 F.3d at
6  632 ("When [a non-treating] physician relies on the same clinical findings as a
7  treating physician, but differs only in his or her conclusions, the conclusions of the
8  [non-treating] physician are not 'substantial evidence'.").

9  Although, as defendant suggests, the ALJ may be able to reject Dr. Lasala's
10 Opinions on other grounds (Defendant's Motion at 13-15), the ALJ did not do so
11 in the decision.  This Court may not affirm the ALJ's non-disability determination
12 based on reasons not articulated by the ALJ.  See Molina, 674 F.3d at 1121 (citing
13 Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196
14 (1947)) ("[courts] may not uphold an [ALJ's] decision on a ground not actually
15 relied on by the agency"); Orn, 495 F.3d at 630 ("We review only the reasons
16 provided by the ALJ in the disability determination and may not affirm the ALJ on
17 a ground upon which he did not rely."); see also Connett v. Barnhart, 340 F.3d
18 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ
19 asserts.").

20 Finally, the Court cannot find the ALJ's error harmless.[4]  As noted above,
21 plaintiff's treating psychiatrists opined, in part, that plaintiff's impairments would
22 cause her to be absent from work more than three or four times a month.  (AR 458,
23 495).  At the hearing, the vocational expert essentially testified that there would be
24 no jobs that plaintiff (or a hypothetical individual with the same characteristics as

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout, 454 F.3d at 1054-56 (discussing contours of application of harmless error standard in social security cases).

10

plaintiff) could do in the regional or national economies, if plaintiff needed to miss work "more than three times a month." (AR 64). Therefore, the Court cannot conclude that the ALJ's step five determination would have been the same absent such error.

## V. CONCLUSION[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 20, 2013

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[5]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).